UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA LIMON,<br><br>                         Plaintiff,<br><br>v.<br><br>THE CITY OF SAN DIEGO, et al.,<br><br>                      Defendants. | Case No.:  23-cv-01491-AJB-BJW<br><br>**ORDER DENYING PARTIES' JOINT EX PARTE MOTION FOR ORDER RETROACTIVELY CONTINUING EXPERT DISCLOSURE AND EXPERT DISCOVERY DEADLINES**<br><br>(Doc. No. 51) |

Nearly two years after the initial scheduling order and after four extensions, the parties seek more time yet again. (Doc. Nos. 27; 30; 32; 37; 44; 51.) The present request follows the Court's denial of a more limited request, partly because the parties have failed to demonstrate that they have acted diligently since the initial scheduling order was issued. (*Compare* Doc. Nos. 47; 49, *with* Doc. No. 51.) Instead of attempting to show that they have been diligent, the parties ask the Court to ignore their lack of diligence. (*Compare* Doc. No. 49 at 6–11, *with* Doc. No. 51 at 7.) Enough is enough.

The Parties' Joint *Ex Parte* Motion for Order Retroactively Continuing Expert Disclosure and Expert Discovery Deadlines is **DENIED**. (Doc. No. 51.)

## I.    BACKGROUND

The Court incorporates its recitation of the relevant factual and procedural background from its July 2, 2026 Order. (Doc. No. 49 at 2–5.)

There, the Court denied the parties' joint request "to continue the July 19, 2026 pretrial motion deadline by 60 days and continue the expert discovery and disclosure deadlines based on the Court's ruling on the pretrial motion deadline." (Doc. No. 47 at 9.)

The parties now ask the Court to "(1) extend the initial expert disclosure deadline from June 19, 2026 to August 14, 2026; (2) extend the rebuttal expert disclosure deadline from June 26, 2026 to September 18, 2026; and (3) extend the expert discovery cutoff from July 12, 2026 (effectively July 13, 2026) to October 2, 2026." (Doc. No. 51 at 2.) The parties thus ask for an 83-day continuance of their expert discovery cutoff, as compared to their prior 60-day request. (*Compare id.*, *with* Doc. No. 47 at 9.)

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 16(b)

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Id.* (quoting Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment). "If the party seeking the modification 'was not diligent, the inquiry should end' and the motion to modify should not be granted." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting *Johnson*, 975 F.2d at 609).

### B.    Reconsideration

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conversation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted); *see also United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009). "[A] motion for reconsideration should

not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Natraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).

## III. DISCUSSION

### A. Rule 16(b)(4) provides the applicable legal standard.

Before the Court addresses the merits of the parties' request (again), the Court must clarify the applicable legal standard for its analysis.

The parties present a haphazard hodgepodge of legal standards for why the Court should extend the expert disclosure and discovery deadlines. (Doc. No. 51 at 3–6.) Specifically, the parties contend that Rule 6(b)(1)(B)'s excusable neglect standard applies in conjunction with Rule 16(b)(4)'s good cause standard. (*Id.* at 4.) The parties do not offer any citation to support this contention. (*See generally id.* at 3–4.) The parties additionally point to the risk of sanctions under Rule 37(c)(1). (*Id.* at 4.)

The parties' reliance on Rule 6(b)(1)(B) and Rule 37(c)(1) are misplaced.

Beginning with Rule 6(b)(1)(B), the interpretive canon of *generalia specialbus non derogant* instructs that if two legal provisions govern the same factual situation, the specific provision controls. *See* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012). Rule 16(b)(4) is the more specific provision. Federal Rule of Civil Procedure 16 governs "Pretrial Conferences; Scheduling; Management." Rule 16(b)(4) addresses the standard for "Modifying a Schedule" that governs, among other things, "the timing of disclosures under Rules 26(a) and 26(e)(1)" and "the extent of discovery." Fed. R. Civ. P. 16(b)(3)–(4). These are the deadlines that the parties wish to move again. (*See* Doc. No. 51 at 2.) In contrast, Rule 6(b) applies more generally to "act[s that] may or must be done within a specified time." Fed. R. Civ. P. 6(b)(1). Rule 6(b)'s more general nature is also confirmed by its own "Exceptions" provision, which states that

a "court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b)." Fed. R. Civ. P. 6(b)(2).

Turning to Rule 37(c)(1), it is not clear how the parties think the Rule governs the Court's review of the present motion. The Rule states

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A)  may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B)  may inform the jury of the party's failure; and
>
> (C)  may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi).

The plain text of Rule 37(c)(1) thus provides no guidance on how the Court should consider the parties' repeated request to extend the expert disclosure and discovery deadlines.

Under these circumstances, the Court adheres to Rule 16(b)(4)'s good cause standard.

**B.  The parties have not established that good cause exists to continue the expert disclosure and expert discovery deadlines.**

**1.  The parties have had ample time to complete expert disclosures and expert discovery.**

Applying Rule 16(b)(4)'s good cause standard, "[t]he district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Johnson*, 975 F.2d at 609 (citation omitted).

The parties do not attempt to show that the pretrial schedule extending over 600 days could not reasonably be met. (*See generally* Doc. No. 51.)

The parties instead claim that they could not meet the June 19, 2026 expert disclosure deadline or the July 12, 2026 expert discovery deadline because "[t]he compressed

23-cv-01491-AJB-BJW

schedule between the July 2, 2026 order and the effective July 13, 2026 expert discovery cutoff, coupled with expert and counsel unavailability, made it impossible to complete approximately seven expert depositions, in five days, and obtain transcripts for meaningful rebuttal." (Doc. No. 51 at 3, 7.)

The problem with this argument is that the parties have had far longer than eleven days to complete expert discovery. Again, Magistrate Judge Barbara Lynn Major entered the first briefing schedule in this matter on November 4, 2024. (Doc. No. 27.) The parties have thus had one year, seven months, and sixteen days to complete expert disclosures. (*See* Doc. No. 44.) They will have one year, eight months, and nine days to complete expert discovery. (*See id.*) Tellingly, the parties fail to acknowledge that the majority of this time span has lapsed. (*See generally* Doc. No. 51.)

Even more troubling, counsel for both parties indicate that they were not even attempting to adhere to scheduling order deadlines. For example, the parties indicate that "Plaintiff's expert Dr. Dennis Wood had preplanned unavailability beginning June 10, 2026." (*Id.* at 3.) Plaintiff's counsel does not offer any explanation as to why she could not work with this expert to complete his report *before* he became unavailable. (*See generally id.*; *see also* Doc. No. 51-1.) Instead, a month before Dr. Wood would become unavailable, Plaintiff's counsel raised a discovery dispute with Magistrate Judge Brian J. White. (*See* Doc. No. 42.) At the ensuing status conference, Magistrate Judge White merely "indicated a willingness to extend expert deadlines." (Doc. No. 51 at 3.) There was no extension granted. (Doc. No. 45.) Even if an assumption that an extension would be granted was reasonable, Plaintiff's counsel does not offer any explanation as to why she proceeded to grant *all of* Plaintiff's experts "an additional thirty days for the expert disclosures" when only one needed more time. (Doc. No. 51-1 ¶ 1.)

Meanwhile, "Defense experts were similarly unavailable in late June and early July." (Doc. No. 51 at 3.) Yet instead of working to make sure the Defense experts completed their materials before they became unavailable, Defense counsel gave the experts more time when no extension had been granted yet. (Doc. No. 51-2 ¶ 3.)

23-cv-01491-AJB-BJW

These circumstances belie any claimed diligence on the parties' part. This is sufficient basis to deny the parties' request again. *Zivkovic*, 302 F.3d at 1087.

### 2. The parties' interpretation of Magistrate Judge White's statements do not provide good cause.

Instead of attempting to show any diligence on their own part, the parties seek to blame their inability to meet the scheduling order deadlines on their interpretation of Magistrate Judge White's statements. In particular, the parties point to a June 18, 2026 status conference during which "Magistrate Judge White indicated a willingness to extend expert deadlines." (Doc. No. 51 at 3; *see also id.* at 5.) Plaintiff's counsel claims that this "indication" constituted a "verbal ruling." (*See* Doc. No. 51-1 ¶¶ 1–2.) Defense counsel contends that Magistrate Judge White's "indication" "advised the Parties [they] could extend the deadline to complete expert disclosures to August 14, 2026." (Doc. No. 51-2 ¶ 2.) The parties' equivocation between labeling Magistrate Judge White's statements as providing an "indication," "verbal ruling," and "advi[ce]" simply reveals that there was no final resolution.

Equivocation aside, these statements do not constitute a "verbal ruling" or the granting of a continuance. At best, Magistrate Judge White's statements "indicate[d]" how he might rule on a motion to continue the expert disclosure and expert discovery deadlines. (*See generally* Doc. No. 51 at 3, 5.)

This interpretation of the statements is supported by Magistrate Judge White's docket entry for the June 18, 2026 status conference. As relevant here, the docket text provides that Magistrate Judge White instructed the parties to "meet and confer in advance of the [June 23, 2026] conference and shall be prepared to discuss . . . a proposed schedule for completion of expert discovery, *based on the current July 19, 2026 pretrial motions deadline*." (Doc. No. 45 (emphasis added).) Before this written instruction, Magistrate Judge White indicated that the parties "may file a motion before U.S. District Judge Anthony J. Battaglia seeking a continuance of the pretrial motion deadline and the pretrial conference, but they are advised not to assume that any such continuance will be granted

23-cv-01491-AJB-BJW

and must proceed accordingly." (*Id.*) In other words, no continuance of the expert disclosure and discovery deadlines was granted during the status conference and any change to the deadlines remained contingent on the pretrial motions deadline. (*See id.*)

The parties' present assertion that a continuance had been granted is also undermined by their previous motion. There, the parties asked the Court "to continue the July 19, 2026 pretrial motion deadline by 60 days and [to] continue the expert discovery and disclosure deadlines based on the Court's ruling on the pretrial motion deadline." (Doc. No. 47 at 9.) If Magistrate Judge White had stated that the expert disclosure and expert discovery deadlines were continued to specific dates, there would be no reason for the parties to ask the Court to continue the very same deadlines. (*See generally id.*) It is also curious that the parties would not offer Magistrate Judge White's continuances as good cause for extending the pretrial motion deadline. (*See generally id.*)

**C.     The parties have not established that excusable neglect is present.**

Instead of addressing whether good cause exists, the parties focus on asserting that the present delays simply amount to excusable neglect. (Doc. No. 51 at 6–7.) Because of this focus, the Court will explain how the parties have not demonstrated that any neglect on their part is excusable even though the excusable neglect standard is incorrect. (*Supra* at 3–4.)

The parties cite to *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395 (1993), and *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261–63 (9th Cir. 2010), to support their proposition that the Court should find their neglect excusable. (Doc. No. 51 at 6–7.) Neither case supports such a finding.

The cited portion of *Pioneer Investment* instructs that the determination of whether a party's neglect is excusable

> is at bottom an equitable one, taking account of all relevant circumstances surrounding the [movant's] omission. These include . . . the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant

23-cv-01491-AJB-BJW

acted in good faith.

507 U.S. at 395. Courts within the Ninth Circuit consider the reason for the delay to be the most important factor. *See, e.g.*, *In re Edwards Theaters Circuit Inc.*, 70 F. App'x 950, 952 (9th Cir. 2003) (citations omitted).

The balance of these factors weighs against a finding of excusable neglect.

First, the parties are equally prejudiced by their reciprocal delays. The parties do not attempt to address how the existing delays have impacted one another. Instead, they point out that they would mutually benefit from an extension because they "face the same practical inability to complete expert discovery within the currently expired schedule." (Doc. No. 51 at 7.) An extension would thus "preserv[e] the parties' ability to develop the expert evidence necessary for fair adjudication." (*Id.*) But insofar as the parties seek to push the expert disclosure and expert discovery deadlines past the pretrial motion deadlines, such continuances will limit each party's ability to bring summary judgment and *Daubert* motions. (*Compare* Doc. No. 47 at 8, *with* Doc. No. 37.) This could result in negative cascading impacts on other pretrial deadlines. (*See* Doc. No. 37.) The Court accordingly finds this favor does not support a finding of excusable neglect.

Second, the length of the delay and its potential impact on judicial proceedings militate against granting an extension. The parties contend that they seek a "modest" delay that "is measured in weeks, not months." (Doc. No. 51 at 6.) They add that this "limited" continuance "will not disrupt trial or materially interfere with case management." (*Id.*)

This characterization of the parties' request beggars belief.

The current expert disclosure deadline lapsed on June 19, 2026. (Doc. No. 44.) The rebuttal expert disclosure deadline lapsed on June 26, 2026. (*Id.*) The expert discovery deadline is in less than a week—July 12, 2026. (*Id.*)

The parties ask to extend the expert disclosure deadline 57 days to August 14, 2026. (Doc. No. 51 at 2.) They also seek to continue the rebuttal expert deadline 85 days to September 18, 2026. (*Id.*) Lastly, they request to move the expert discovery deadline 83

days to October 2, 2026. (*Id.*) By the Court's count, this is an extension of two *months* and 21 days. This is not mere weeks. (*Cf. id.* at 6.)

Counting semantics aside, it is unlikely that the requested extension will not impact any other case deadlines. For instance, the pretrial motion deadline is currently July 19, 2026. (Doc. No. 37.) Given that the parties are asking the Court to continue two of the three deadlines that the Court already declined to move (Doc. No. 49), it would not be surprising for the parties to seek an extension of the third, pretrial and *Daubert* motions deadline down the line. (*See* Doc. No. 47 at 7–8.) And by the parties' reasoning, continuing the expert discovery deadline to October 2, 2026, would "compress[]" the time between the end of expert discovery and pretrial disclosures from 107 days to 25 days. (*See, e.g.*, Doc. No. 51 at 7.) At which point, the parties could point to the same reasoning to extend the pretrial disclosures deadlines. (*See id.*)

Third, the current requested delay is attributable to the parties' repeated lack of adherence to the scheduling order.[1] As previously discussed, counsel for both parties have indicated that they are not even attempting to adhere to scheduling order deadlines. (*Supra* at 4–6.)

In fact, the record reveals a recurring pattern of the parties waiting until the eleventh hour and seeking an extension. For instance, two weeks before the initial June 6, 2025 expert designation deadline was set to lapse, the parties moved the Court for a 4-month extension of all scheduling order deadlines. (Doc. Nos. 27 at 1; 29.) Four months later and two weeks before the continued October 6, 2025 expert designation deadline was set to

---

[1] The parties' complaint about the Court's July 2, 2026 Order compressing their schedule is illogical. (*See id.* at 3 ("The compressed schedule between the July 2, 2026 order and the effective July 13, 2026 expert discovery cutoff").) The Court's Order had no impact on the deadlines. (Doc. No. 49 at 11.) Furthermore, the parties did not move to extend the June 19, 2026 expert disclosure deadline until June 26, 2026—*after* the expert disclosure deadline had already lapsed. (*See* Doc. Nos. 44; 47.) Thus, the only deadline that could have been "compressed" is the expert discovery deadline, which the Court did not change. (Doc. No. 49 at 11.)

23-cv-01491-AJB-BJW

lapse, the parties moved the Court for a second 4-month extension of all scheduling order deadlines. (Doc. Nos. 30; 31.)

As another example, this pattern is also reflected in Plaintiff's counsel's noticing of Defendant Stephanie Rose's ("Rose") deposition. In September 2025, Magistrate Judge Major extended the fact discovery deadline to March 25, 2026. (Doc. No. 32.) However, it does not appear that Plaintiff's counsel attempted to notice Rose's deposition before that deadline. (*See* Doc. No. 47 at 4, 6 (explaining Plaintiff's counsel noticed Rose's deposition for the week of May 18, 2026, and June 11, 2026; *see also id.* at 9–10 (explaining Defendants made Rose available for deposition on two dates).) Instead, Plaintiff's counsel apparently waited until after Magistrate Judge White extended the fact discovery deadline to May 25, 2026, to notice Rose's deposition. (*Compare* Doc. No. 37, *with* Doc. No. 47 at 4.)

Thus, as the Court previously noted, it is *the parties*' serial requests to continue the scheduling order deadlines that have negatively impacted their ability to comply with the scheduling order. (*See* Doc. No. 49 at 10.)

Fourth, despite the pattern of delays, the Court is willing to assume that the parties are acting in good faith in their present extension request.

Under these circumstances, three of the four *Pioneer* factors weigh against a finding of excusable neglect. Most importantly, the parties themselves created the need for the requested delay. *Edwards Theaters*, 70 F. App'x at 952. Yet the parties completely fail to acknowledge this reality and instead seek to blame the Court. Such neglect is not excusable.

These circumstances are also clearly distinguishable from *Ahanchian*, where the non-movant would not be prejudiced, the movant requested a three-day extension, the delay was caused by a calendaring mistake, and there was no indication of bad faith. 624 F.3d at 1262.

**D.    The parties have not established that reconsideration is warranted.**

The parties make a fleeting assertion that "[t]o the extent reconsideration is implicated, the Court may grant relief based on material changes in circumstances,

23-cv-01491-AJB-BJW

manifest injustice, or the need to prevent undue prejudice when strict adherence to prior scheduling determinations would thwart adjudication on the merits." (Doc. No. 51 at 4.) However, the parties go no further. (*See generally id.*)

Without more, the Court cannot say that reconsideration is warranted.

Further, a "motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Maryln Natraceuticals*, 571 F.3d at 880 (citation omitted). None of these circumstances is present.

Thus, reconsideration is denied. (*Id.*)

**E.    The parties' failure to comply with the expert disclosure and expert discovery deadlines does not justify the requested extensions.**

In a last-ditch effort, the parties claim that the application of Rule 37(c)(1) "exclusion of expert testimony would be a disproportionately severe outcome." (Doc. No. 51 at 7.) The parties thus assert that the requested extension "is the least drastic remedy available and fully addresses any concern regarding orderly case management while avoiding unnecessary prejudice to either party." (*Id.* at 7–8.)

In applying Rule 37(c)(1) sanctions, courts must consider "whether substantial justification and harmlessness exist, including (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022) (citation omitted).

But the parties do not provide substantial justification for failing to meet the expert disclosure and expert discovery deadlines. Again, allowing the extension would prejudice the parties' ability to comply with the dispositive and *Daubert* motion deadlines, and would also likely negatively impact other pretrial deadlines. (*Supra* at 8.) The parties' proposed solution for this prejudice is for the Court to reward the parties with even more time for failing to comply with the scheduling order. (Doc. No. 51 at 7–8.) But such a solution

23-cv-01491-AJB-BJW

would likely lead to further disruptions of the scheduling order and, in turn, the timing for any trial. (*Supra* at 8.) Finally, the record points in favor of a finding that the parties' failure to meet their deadlines has been willful. (*Supra* at 4–6, 9–10.)

Under these circumstances, the Court cannot say that the risk of Rule 37(c)(1) sanctions warrants the parties' requested continuances. Nevertheless, the Court is open to considering other appropriate sanctions. *See* Fed. R. Civ. P. 37(c)(1)(C).

## IV. CONCLUSION

For the foregoing reasons, the Parties' Joint *Ex Parte* Motion for Order Retroactively Continuing Expert Disclosure and Expert Discovery Deadlines is **DENIED**. (Doc. No. 51.)

**IT IS SO ORDERED**.

Dated:  July 8, 2026

Hon. Anthony J. Battaglia
United States District Judge

23-cv-01491-AJB-BJW