UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA LIMON, Plaintiff, v. THE CITY OF SAN DIEGO, et al., Defendants. | Case No.: 23-cv-01491-AJB-BJW<br>**ORDER ON PLAINTIFF'S EX PARTE MOTIONS**<br>(Doc. Nos. 60, 61) |

Before the Court are Plaintiff Rebecca Limon's ("Limon") *Ex Parte* Motion for Imposition of Lesser Sanctions in Lieu of Exclusion of Plaintiff's Expert Witnesses at Trial ("Sanctions Motion") (Doc. No. 60) and *Ex Parte* Motion for Reconsideration of Magistrate Judge White's Order Granting Defendants' Motion for a Protective Order ("Reconsideration Motion") (Doc. No. 61.)

Defendants the City of San Diego, David Nisleit, Melissa Jackson, Stephanie Rose, Silvia Satrom, and Gil Witte (collectively, "Defendants") have not responded to these motions. J. Battaglia Civ. Case Proc. § V.B.

For the following reasons, the Court (1) **SETS** a hearing for **<u>August 13, 2026</u>**, to address the Sanctions Motion and (2) **GRANTS IN PART AND DENIES IN PART** the Reconsideration Motion.

## I. BACKGROUND

The Court incorporates its recitation of the relevant factual and procedural background from its prior Orders. (*See* Doc. Nos. 49 at 2–5; 52 at 2.)

Following the Court's July 2, 2026 Order, Plaintiff's counsel Suzy Moore ("Moore") noticed the deposition of Defendant Stephanie Rose ("Rose") for July 15, 2026 (Doc. No. 53-2 at 2–5), and three Defense experts for July 10, 2026 (*id.* at 6–20). Moore would depose Rose, and Moore's supervising attorney would depose the Defense experts. (Doc. No. 61-1 at 2–3 ¶¶ 5–6; *see also id.* at 18.)

On July 6, 2026, Defense counsel informed Moore that Rose could appear for a deposition on July 8. (Doc. Nos. 53-1 ¶ 6; 61-1 at 2–3 ¶ 5.) The parties thus arranged for Moore to depose Rose on July 8. (Doc. Nos. 53-1 ¶ 6; 61-1 at 2–3 ¶ 5.)

On July 8, 2026, however, Rose was unable to appear for the deposition because she was suffering from a migraine. (Doc. Nos. 53-1 ¶ 6; 61-1 at 3–4 ¶ 8.) Defense counsel offered to reschedule Rose's deposition for July 10, which would require Rose to change her vacation plans. (Doc. Nos. 53-1 ¶ 6; 61-1 at 3–4 ¶ 8.) Moore rejected the proposal because she already had depositions scheduled on that day for a different matter. (Doc. Nos. 53-1 ¶ 7; 61-1 at 3–4 ¶ 8.) Instead, Moore insisted on moving forward with deposing Rose on July 15. (Doc. Nos. 53-1 ¶¶ 8–9.)

The following day, Defense counsel filed an *ex parte* motion for a protective order to preclude Limon from deposing Rose and the three Defense experts. (Doc. No. 53.) In support of the motion, Defense counsel argued that Limon did not provide sufficient notice for any of the depositions. (*Id.* at 4–6.) Defense counsel added with regard to Rose's deposition that "[a]n attorney with Plaintiff's counsel's firm is available to take the deposition of Rose on July 10, 2026." (*Id.* at 5.) Defense counsel also asserted that Moore did not provide 30-days' notice to request document production from the experts, as required by Federal Rule of Civil Procedure 34(b)(2)(A), and that Rule 32(a) "prohibits the use of a deposition 'against a party who, having received less than 11 [*sic*] days' notice of

a deposition, has promptly upon receiving such noticed filed a motion for a protective order . . . .” (*Id.* at 5–6.)

On July 10, 2026, following a status conference, Magistrate Judge Brian J. White granted a protective order barring Limon from deposing Rose and the three Defense experts. (Doc. No. 54.)

Concurrent with these events, on July 7, 2026, the parties filed a Joint *Ex Parte* Motion for Order Retroactively Continuing Expert Disclosure and Expert Discovery Deadlines. (Doc. No. 51.) On July 9, the Court denied the motion. (Doc. No. 52.) In its denial, the Court explained that it “cannot say that the risk of Rule 37(c)(1) sanctions warrants the parties’ requested continuances. Nevertheless, the Court is open to considering other appropriate sanctions.” (*Id.* at 12.)

Limon now asks the Court to reconsider Magistrate Judge White’s protective order and to impose a lesser sanction than exclusion of her experts’ testimony at trial. (Doc. Nos. 60; 61.)

## II. LEGAL STANDARD

### A. Reconsideration

Reconsideration is an “extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.” *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted); *see also United Nat’l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009). “[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.” *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).

### B. Federal Rule of Civil Procedure 37

Pursuant to Federal Rule of Civil Procedure 37(c),

> [i]f a party fails to provide information or identify a witness as required by

> Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi).

Rule 37 thus creates an "automatic" sanction "even when a litigant's entire cause of action or defense [would be] precluded." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (citations omitted). A litigant must prove that the discovery violation "was substantially justified" or "harmless" to avoid Rule 37(c) exclusion. *Id.*

## III. DISCUSSION

### A. On or before July 31, 2026, Limon may depose only Rose.

In the Reconsideration Motion, Limon asserts that "exclusion of Captain Stephanie Rose's deposition and the deposition of non-party experts would preclude Plaintiff from having her case heard on its merits." (Doc. No. 61 at 2.) Limon points out that the Court found that "good cause exists to grant Limon limited leave to depose Rose now that the fact discovery deadline has lapsed." (*Id.* at 4 (quoting Doc. No. 49 at 6).) Limon adds, without much explanation, that "this case presents the type of highly unusual circumstance warranting reconsideration." (Doc. No. 61 at 5.)

The Court finds that the present circumstances are "highly unusual" and warrant reconsideration. *See Marlyn Nutraceuticals*, 571 F.3d at 880. The Court previously found that good cause exists to allow Limon to depose Rose by July 15, 2026. (Doc. No. 49 at 6–7.) Relying on the Court's July 2, 2026 Order, Limon noticed Rose's deposition for July 15, 2026—the last day on which Limon could depose Rose. (Doc. No. 53-2 at 2–5.) The parties subsequently worked together to schedule Rose's deposition for July 8, 2026. (Doc. No. 61-1 at 2–3 ¶ 5; *see also* Doc. No. 53-1 ¶ 6.) On that date, however, Rose could not appear for a deposition because she was suffering from a migraine. (Doc. No. 61-1 at 3–4

¶ 8; *see also* Doc. No. 53-1 ¶ 6.) Defense counsel then offered to make Rose available for a deposition on July 10, 2026, but Moore was not available on that date. (Doc. No. 61-1 at 3–4 ¶ 8.) Moore thus insisted on moving forward with Rose's deposition on July 15, 2026. (*Id.*)

Instead of working with Limon and Moore, Defense counsel moved for a protective order to bar Rose's deposition. (Doc. No. 53.) Defense counsel asserted that a protective order was needed because Rose did not receive sufficient notice for a July 15 deposition and that, instead, Moore's co-counsel should take Rose's deposition on July 10. (*Id.* at 4–5.)

Defendants' objections to Rose's deposition are unreasonable. On the issue of notice, on the very same day that the Court granted Limon more time to depose Rose, Moore noticed Rose's deposition. (Doc. No. 53-2 at 2–5.) Additionally, Limon noticed Rose's deposition for July 15, 2026—the very last day that Limon could take Rose's deposition. (*See* Doc. No. 49 at 7, 11.) Limon thus provided Rose with the maximum amount of notice possible under the Court's Order. (*See id.*) Furthermore, given that Defendants were able to make Rose available for deposition on both July 8 and 10 (*see* Doc. No. 53-1 ¶ 6), it is clear that Rose had sufficient notice for the deposition.

On Defendants' suggestion that Moore's co-counsel could have deposed Rose on July 10, the Court notes Moore's co-counsel was preparing to depose three Defense experts on that date. (Doc. No. 61 at 3.) Additionally, neither party was aware that Rose would be unavailable for a July 8 deposition until the morning of the deposition. (*See id.*; *see also* Doc. No. 53-1 ¶ 6.) It is unreasonable for Defendants to suggest that Moore's co-counsel should have completed preparations for Rose's deposition within two days, while *also* preparing to depose three experts.

However, the Court agrees with Defendants that a protective order was warranted to bar the three Defense expert depositions.[1] The Court has already denied two requests to extend expert discovery deadlines. (Doc. Nos. 49; 52.) In denying the requests, the Court noted that the parties have not been diligent in conducting discovery despite having a pretrial schedule extending over more than 600 days. (*See, e.g.*, Doc. No. 52 at 4–6, 9–10.)

Based on the information before the Court, Limon did not attempt to notice depositions for any of the three Defense experts between November 4, 2024, and July 1, 2026—a span of 604 days. (*See* Doc. No. 61-1 at 2 ¶ 4.) On July 2, 2026, ten days before the July 12, 2026 expert discovery deadline, Limon noticed depositions for the three Defense experts for July 10, 2026. (Doc. No. 53-2 at 6–20.) In the notices, Limon sought the production of "documents and materials." (*Id.* at 10, 15, 20.)

In seeking a protective order against the Defense expert depositions, Defendants asserted that they did not receive sufficient notice for the expert depositions, especially in light of Limon's combined request for document production. (Doc. No. 53 at 5–6.) Defendants add that Federal Rule of Civil Procedure 32(a) would preclude Limon from using the depositions at trial and that Limon did not serve subpoenas on the experts. (*Id.* at 6.)

In light of Limon's waiting until the last minute to serve deposition notices for the three Defense experts and the other deficiencies in Limon's requests, Defendants' objections to the Defense expert depositions were reasonable.

Under these circumstances, the Court **GRANTS IN PART AND DENIES IN PART** the Reconsideration Motion. (Doc. No. 61.) On or before **July 31, 2026**, Limon

---

[1] The Court notes that Limon represented to the Court that the Reconsideration Motion would be limited to reconsidering Magistrate Judge White's July 10, 2026 Minute Order as it pertains to Rose's deposition. (*See* Doc. No. 61-1 at 4–5 ¶ 12.) However, Limon's Reconsideration Motion now appears to seek reconsideration of the entirety of the July 10, 2026 Minute Order. (*See, e.g.*, Doc. No. 61 at 2 (protesting "exclusion of Captain Stephanie Rose's deposition *and the deposition of non-party experts*" (emphasis added).) Accordingly, the Court also addresses the application of the protective order to the three Defense experts.

may depose Defendant Stephanie Rose. Defendants must make Rose available for the deposition. Limon may not depose any of the three Defense experts.

**B. The Court will consider imposing other sanctions than the complete exclusion of Limon's experts' testimony.**

The parties' expert disclosure deadline lapsed on June 19, 2026. (Doc. No. 44.) Limon did not comply with this deadline, instead serving Defendants the report of Matthew S. Ferrante on July 7, 2026; and the report of Dr. Dennis P. Wood on July 9, 2026. (Doc. No. 60 at 4–5.) Recognizing that Rule 37(c)(1) would impose an automatic sanction precluding the use of these experts' testimony at trial, Limon asks the Court to "impose an appropriate lesser sanction in lieu of exclusion of Plaintiff's experts." (*Id.* at 8.)

In support of this request, Limon points out that Rule 37(c)(1) allows courts to impose alternative sanctions. (*Id.* at 5–6 (quoting *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021)).) Limon asserts that excluding her experts' testimony "would be a 'fatal blow.'" (*Id.* at 6 (quoting *Merchant*, 993 F.3d at 740–41).) Limon adds that

> there is no surprise or prejudice for [Matthew Ferrante] to calculate the lost earnings of the Latent Print Examiner; Plaintiff is willing to make her experts immediately available for deposition; the trial date has not yet been set since the Pre-Trial Conference is approximately fourth months away and Plaintiff's counsel did not engage in bad faith or willfulness since both parties believed an extension was forthcoming.

(*Id.*)

Under Ninth Circuit precedent, "if a Rule 37(c)(1) sanction will 'deal[] a fatal blow' to a party's claim, a district court must consider (1) 'whether the claimed noncompliance involved willfulness, fault, or bad faith' and (2) 'the availability of lesser sanctions.'" *Merchant*, 993 F.3d at 740–41 (quoting *R&R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1247 (9th Cir. 2012)). These factors must be considered as part of Rule 37(c)(1)'s harmlessness inquiry. *Id.* at 741 (quoting *R&R Sails*, 673 F.3d at 1247). An alternative sanction may be imposed "on motion and after giving an opportunity to be heard." Fed. R. Civ. P. 37(c)(1).

In light of Rule 37(c)(1)'s requirements, the Court **SETS** a hearing for **August 13, 2026**, to provide the parties an opportunity to be heard. On or before **July 31, 2026**, the parties may each file a 10-page supplemental brief addressing the following issues:

1. Whether exclusion of Matthew S. Ferrante's or Dr. Dennis P. Wood's testimony would be a "fatal blow";
2. Whether Limon's failure to comply with the discovery schedule was substantially justified;
3. Whether Limon's failure to comply with the discovery schedule was harmless;
4. Whether Limon's failure to comply with the discovery schedule involved willfulness, fault, or bad faith; and
5. What alternative sanction, including the sanctions identified by Rule 37(c)(1)(A)–(B) and Rule 37(b)(2)(A)(i)–(vi), is "appropriate."

On Issue 3, Defendants must address how, if at all, they believe their pretrial and *Daubert* motions (Doc. Nos. 56–59) may have differed if Limon had complied with the discovery schedule.[2]

## IV. CONCLUSION

For the foregoing reasons, the Court **ORDERS**:

1. On or before **July 31, 2026**, the parties may file 10-page supplemental briefs addressing the above-identified issues related to Limon's Sanctions Motion.

2. On **August 13, 2026**, at 10:00 a.m., the Court will hear the parties on whether alternative sanctions are appropriate.

3. The Court will rule on Limon's Sanctions Motion after the August 13, 2026 hearing. (Doc. No. 60.)

---

[2] The Court notes that Defendants have filed a Motion *in Limine* to Exclude Expert Testimony of Dennis Patrick Wood. (Doc. No. 59.) Any ruling on Limon's Sanctions Motion will not preclude Defendants' arguments in the pending Motion *in Limine*.

4. Limon's Reconsideration Motion is **GRANTED IN PART AND DENIED IN PART**. (Doc. No. 61.) Limon may depose Defendant Stephanie Rose on or before **July 31, 2026**. **No further continuances will be granted**. Limon may not depose the three Defense experts.

**IT IS SO ORDERED**.

Dated: July 22, 2026

Hon. Anthony J. Battaglia
United States District Judge